UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DAVID HEREDIA,

               Plaintiff,

v.                                              CAUSE NO. 3:23cv1091 DRL

LAPORTE COUNTY,

               Defendant.

## OPINION AND ORDER

David Heredia brings discrimination and retaliation claims against his former employer, LaPorte County, under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq*. He worked at the LaPorte County Community Corrections (LPCCC). He alleges the county denied him a promotion because of his Puerto Rican ancestry and retaliated against him for engaging in protected conduct. LaPorte County requests summary judgment and also asks the court to strike Mr. Heredia's summary judgment response, to set a hearing, and to grant leave to file a reply. The court declines to strike the response and grants summary judgment only in part.

## BACKGROUND

The following facts are established by the summary judgment record, as viewed in the light most favorable to the nonmovant. *See Lauth v. Covance, Inc.*, 863 F.3d 708, 710 (7th Cir. 2017). In 2022, a shortage of leadership and staff at LPCCC precipitated an emergency [24-1 Ex. B ¶ 13]. On July 20, 2022, Mericka Beaty was promoted to LPCCC Interim Director and authorized to restructure roles and install an administration as she saw fit (she was later appointed Director on October 19, 2022) [*id.* ¶ 3, 15]. LPCCC had an immediate need for a new Field Coordinator, and, by October 25, 2022, she promoted Jeremy Benstine to this position rather than post the job [*id.*

¶ 17, 19; 24-2 Ex. I]. She selected Mr. Benstine in part due to his advanced education, supervisory skills developed as a human resources director, and professional experience as a licensed medical first responder, former police officer, and firefighter [24-1 Ex. B ¶ 19].

At that time, David Heredia was a Field Officer with LPCCC [24-2 Ex. H]. He is of Puerto Rican ancestry and was the only such person employed by the county at LPCCC [24-1 Ex. A Tr. 6; 25-11 at 2]. He later told Director Beaty he disagreed with the decision to promote Mr. Benstine to Field Coordinator, who would be then his direct supervisor [25-7 at 2]. He was upset Mr. Benstine was chosen despite having the least seniority and experience in the field department, and he thought the decision not to post the position was contrary to policy [*id.*].

When Mr. Benstine became Field Coordinator, Mr. Heredia had over two years of experience as a Field Officer—the most senior on the team [24-1 Ex. A Tr. 33; 24-2 Ex. H]. His work history included more than ten years in various security roles, he was certified in CPR/AED, and he had taken college courses [24-1 Ex. A Tr. 6-7; 24-2 Ex. H]. He had a history of conflict with one colleague, Lori Pusz [24-2 Ex. F], including a complaint he filed reporting, among other things, that "she stated in the office that every person that comes to the program needs to know English that this ain't Mexico and why should she need[] to know Spanish when this is American" [*id.*]. LaPorte County says Mr. Heredia wasn't qualified for the Field Coordinator position because it was concerned he wouldn't be able to set aside his squabbles with Ms. Pusz [24-1 Ex. B ¶ 20]. Ms. Pusz complained to Director Beaty that Mr. Heredia created a hostile work environment for her and other colleagues [24-2 Ex. Q at 2].

On December 13, 2022, Mr. Benstine disciplined Mr. Heredia for clocking into work late on ten occasions—every day he had been scheduled to work since November 2, 2022 [*id.* Ex. L]. At the disciplinary meeting, Mr. Heredia claimed he was being retaliated against because he

planned to file a complaint with the Equal Employment Opportunity Commission (EEOC) alleging he was being harassed and treated unfairly based on a protected characteristic [24-2 Ex. M].[1] Though he received a warning [24-2 Ex. L], he was disciplined again soon after for tardiness, as a memo documented that he clocked in late on five occasions between December 28, 2022 and January 4, 2023 [24-2 Ex. N]. He was suspended for one day without pay [*id.*].

On January 5, 2023, Mr. Heredia filed a discrimination charge with the EEOC [24-1 Ex. C]. He alleged he had been subjected to racist comments and disparate treatment, including not being afforded an opportunity to apply for a position. He also said he was retaliated against, and his complaints resulted in verbal warnings and having an office and position offer rescinded.

On July 5 that year, Mr. Benstine wrote up Mr. Heredia for working past his scheduled shift end time without permission, which resulted in a "comp time" request that lacked prior approval [24-2 Ex. O]. He gave Mr. Heredia an oral warning and explained that repeating this violation would result in further disciplinary action, up to and including termination.

A flurry of communications and disciplinary actions ensued over the following days. On July 6, Mr. Heredia sent an email to Director Beaty complaining that Mr. Benstine called him into a room for a private meeting and required it be recorded [25-10 at 2]. He said the recording made him uncomfortable; no one else needed their meetings recorded, and he called this behavior and other micromanagement retaliation for filing an EEOC complaint.

On July 11, Director Beaty sent Mr. Heredia a combined recap of a meeting they had on July 7 and response to a formal complaint Mr. Heredia lodged on July 10, copying Interim Human

---

[1] Documentation of the meeting conflicts as to whether Mr. Heredia said he filed an EEOC claim or that he planned to file one [24-2 Ex. M]. As there is only one EEOC complaint in the record and it is dated January 5, 2023 [24-1 Ex. C], the record credits only the latter.

Resources Director Monique Thomas [24-2 Ex. S; 25-11 at 3]. She said she was aware that Mr. Heredia complained he was picked on by Mr. Benstine. She knew Mr. Benstine recorded a conversation with Mr. Heredia, and she listened to the recording. She acknowledged Mr. Heredia had complaints lodged with the EEOC and United States Department of Labor. She admonished Mr. Heredia for certain conduct, including policy violations and insubordination toward Mr. Benstine. She observed that the "[a]dministration is spending more than 5 hours weekly dealing with formal and informal complaints regarding you reporting to Field Coordinator Benstine. This has to stop. We have to come to a resolution. . . . Your refusal to respect Benstine has created a toxic atmosphere. Which will no longer be tolerated. It is my hope that we can resolve this issue quickly. If we cannot come to a place of respect, I will have no choice but to remove you from the department."

Mr. Heredia sent Director Beaty a response the same day, also copying the HR Director Thomas [25-11 at 2-3]. He complained about being removed from his office and reassigned to "a dirty hot closet with a camera in it." He said he was being singled out. He repeated complaints about the Field Coordinator hiring process, and said he filed an EEOC complaint about disparate treatment. Finally, he asked to whom he could escalate his complaints.

On July 17, Mr. Heredia was reassigned—demoted, as he later put it—from Field Officer to Residential Officer [24-2 Ex. P; 25-15 at 2]. The disciplinary memo (dated July 10, 2023 but signed by leadership on July 17, 2023) broadly cited his conduct and insubordination over at least the prior eight months, including disrespect toward Mr. Benstine and his failures to comply with protocols for clocking in and out. [24-2 Ex. P]. It also noted that this was his fifth disciplinary action and that these issues had been addressed multiple times by Mr. Benstine and other members of LPCCC leadership. Mr. Benstine wrote that he didn't feel comfortable serving Mr.

Heredia paperwork or interviewing him without another person present or a recording "due to his hostile nature and the constant threat of running to HR, EEOC and the Labor board." Mr. Heredia turned over his county-issued cellphone and car keys and was told to report to "residential" the following morning [24-1 Ex. A Tr. 76; 24-2 Ex. R].

On July 19, Mr. Heredia sent a complaint from his personal email to HR Director Thomas [25-15]. He said he was wrongfully demoted, disputed certain instances of alleged insubordination, and complained of disparate treatment, both regarding being recorded by Mr. Benstine and the relocation of his workspace. He mentioned his EEOC complaint and said he was being retaliated against.

On July 20, Mr. Heredia was terminated [24-2 Ex. R]. The disciplinary memo recounts certain prior events. On July 18, Mr. Heredia called in sick, albeit just before his shift and contrary to policy. Director Beaty emailed him early that morning asking for the passcode to the phone he turned in the day before so LPCCC staff could access client communications, but he didn't reply. A colleague also texted Mr. Heredia that morning requesting passcode information; though Mr. Heredia responded hours later, he provided incorrect passcodes with insufficient digits and said he typically used FaceID. According to the disciplinary memo, Mr. Heredia accessed the work phone four times just before noon on July 18, and he remotely accessed his email, transferred emails to his personal email account, and factory reset the phone, erasing all the information therein. He sent a "find my iPhone alert" to the phone in the mid-afternoon.

The disciplinary memo continued. On July 19, Mr. Heredia reported to work, was asked to open the phone to retrieve client messages, and he accessed it with a password, navigating to settings. When Director Beaty was later given the phone, it had been factory reset with all information deleted. She asked Mr. Heredia if he deleted the messages; he said he only opened

the phone and the Apple ID was his. According to the disciplinary memo, the IT director retrieved data from Mr. Heredia's email verifying that Mr. Heredia factory reset the phone and exported emails to his personal email. The memo noted Mr. Heredia was reassigned jobs on July 17 due to insubordination and disrespect to his supervisor, his destruction of departmental and confidential records and data was a gross violation, and he lied when confronted.

In a deposition, Mr. Heredia denied destroying LPCCC records or information [24-1 Ex. A Tr. 75-80]. He pointed out that he turned in his phone on July 17 when he was demoted and had no possession of it for the remainder of his employment there when these other events were alleged to have occurred [*id.* Tr. 75-76]. He said he never factory reset the phone or deleted messages [*id.* Tr. 75-77, 79-80].

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on

the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant summary judgment when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

Before reaching the substantive issues, the court must first address LaPorte County's motion to strike, an often unnecessary and complicating request, particularly when it merely creates another chain of briefing that tends to delay ruling. Such motions are generally disfavored. *Pack v. Middlebury Cmty. Schs.*, 458 F. Supp.3d 1020, 1028 (N.D. Ind. 2020). The county asks the court to strike Mr. Heredia's summary judgment response because he failed to include a statement of genuine disputes. So confident is the county in its view that it opted not to reply, though it asks for leave to file one if the court denies the motion.

Mr. Heredia says his statement of material facts is compliant, noting that a statement of genuine disputes is an artifact from rules last in effect over three years ago. He is right. *Contrast* N.D. Ind. L.R. 56-1 (Feb. 25, 2022), *with* N.D. Ind. L.R. 56-1(b)(2) (Nov. 18, 2019). There is no basis to strike his response for this reason, so the court must deny the motion to strike.

The court observes that the response to the statement of material facts at times, unhelpfully, includes argument or fails to address what portion of a factual statement he admits or denies specifically, but the so-called "clarifications" or paragraphs in dispute are relatively minor and permit the court to evaluate them for their merit. To the extent the response to the statement of material facts omits, as the rules require, a verbatim restatement of the original material fact and a particular response—and at times, this responsive statement just omits whole paragraphs from the original motion—the court deems those particular facts admitted (Mr. Heredia's seeming intent anyway).

LaPorte County's conditional request for time to reply was timely (filed before its reply deadline), so the court may grant leave for good cause. Fed. R. Civ. P. 6(b)(1)(A). But it is difficult to say there is good cause when the local rules require a reply, and the county elected to file a motion to strike based on an old local rule, not the current one. If one wants to live by the rules, one must also be willing to die by them. The court will not allow a reply and proceeds without further briefing.

A. *Title VII Discrimination.*

Mr. Heredia says he was discriminated against because of his Puerto Rican ancestry. Though LaPorte County presents a smattering of counterarguments—against a hostile work environment, discrimination in hiring for three positions (not just the one at issue today), and harassment by a supervisor—Mr. Heredia only defends two precise discrimination claims: when he wasn't promoted to Field Coordinator and when he was suspended, demoted, and terminated.

Speaking of rules, the court requires the parties to meet and confer to address these asynchronies before filing a summary judgment motion.[2] Given LaPorte County's lack of certification and the extent to which the briefs at times speak past each other, the court can only conclude that the parties didn't do this. Because the parties have briefed the motion, the court will not take remedial action this time—beyond declining the county's reply—but the defendant is cautioned that failure to comply with the court's requirements in the future may result in sanctions or stricken motions. For now, the court addresses just the two claims that Mr. Heredia maintains today and treats the others as abandoned.

---

[2] Instructions for motions for summary judgment from this presider: "The parties must meet and confer in good faith before filing any summary judgment motion to streamline the issues, to address choice of law, and to plan the efficient presentation of arguments. The movant must certify in the motion that the parties have so conferred, else the court may take remedial action."

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1); *see also Ames v. Ohio Dep't of Youth Servs.*, 221 L. Ed. 2d 929, 934 (2025). The question at summary judgment is whether the evidence, considered as a whole, would permit a reasonable factfinder to conclude that Mr. Heredia's Puerto Rican ancestry caused an adverse employment action. *See Galvan v. Indiana*, 117 F.4th 935, 939 (7th Cir. 2024); *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Because evidence of overt discrimination can be rare, answering this question requires the court to evaluate the "genuineness" of an adverse employment decision. *Galvan*, 117 F.4th at 939.

Mr. Heredia can show discrimination under Title VII with direct evidence or circumstantial evidence, such as suspicious timing, ambiguous statements of animus, proof that other employees were treated differently, or evidence the employer's stated reason for the adverse employment action was pretextual. *Id.* If he chooses, he can also rely on a well-worn burden-shifting framework. *Id.*; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, he must make out a *prima facie* case of discrimination, at which point the burden shifts to LaPorte County to offer a nondiscriminatory motive for its employment decision (the so-called adverse action). *Igasaki v. Ill Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). If the county succeeds, the burden returns to Mr. Heredia to show the stated reason was pretextual.

1. *Discrimination in Hiring.*

Mr. Heredia contends that he was discriminated against when LaPorte County failed to promote him to Field Coordinator. He believes he has direct evidence of discriminatory animus. He testified that, when he met with Director Beaty to complain about the hiring process for the position, she told him there had never been a Mexican Field Coordinator and, when he said he

was Puerto Rican, she responded that "Puerto Rican and Mexicans are the same" [24-1 Tr. 41]. He argues this shows he wasn't hired because of his ancestry, but this is a leap too far. This conversation occurred after the hiring decision had been made.

Though Director Beaty's statement, taking all inferences in Mr. Heredia's favor as the court must, would demonstrate insensitivity and ignorance of the differences in heritage, a reasonable jury could not rely on these one-time and post-hiring observations alone to find that animus drove the director's earlier hiring decision. *See Teruggi v. CIT Grp./Cap. Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013); *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006). On this record, Director Beaty was unaware of Mr. Heredia's Puerto Rican ancestry at the time she made the hiring decision. At most, a reasonable jury could say the director observed in a later conversation that no LPCCC Field Coordinator originated from a Puerto Rican or Mexican heritage, but not that her later awareness caused her to make her prior hiring decision.

The question is what else Mr. Heredia might adduce as evidence to show her observation wasn't merely that—an after-the-fact observation—but instead a revelation of her awareness, indeed animus, that drove her decisionmaking in hiring before this conversation. Here the record falters. Mr. Heredia relies on the indirect method. To make a *prima facie* case for discrimination in the failure-to-promote context, he must show (1) he was a member of a protected class, (2) he applied and was qualified for a job for which LaPorte County was seeking applicants, (3) he was rejected despite his qualifications, and (4) the position was given to a person outside the protected class who was similarly or less qualified than the plaintiff. *See Cunningham v. Austin*, 125 F.4th 783, 788 (7th Cir. 2025); *Grayson v. City of Chi.*, 317 F.3d 745, 748 (7th Cir. 2003); *see also McDonnell Douglas*, 411 U.S. at 802 n.13 (using different fourth prong but noting requisite *prima facie* proof may vary based on different facts).

Citing *Grayson*, Mr. Heredia slightly misstates the second element as "he was qualified for the potential promotion" when that case is clear that he must have sought the position. *See also Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) ("plaintiff must prove by a preponderance of the evidence that []he applied for an available position for which []he was qualified"). LaPorte County doesn't contest Mr. Heredia's Puerto Rican ancestry or that he is a member of a protected class. *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973) ("The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."). Focusing instead on the other factors, the county argues he cannot make out a *prima facie* case of discrimination for a jury and cannot demonstrate pretext.

Mr. Heredia's case falls short of meeting the second element. The LPCCC indisputably experienced a staff shortfall after an employee exodus in 2022; and, as a result, Director Beaty sought to hire a Field Coordinator immediately and selected Mr. Benstine without posting the position. Mr. Heredia acknowledges that Director Beaty identified and hired someone unilaterally without applications or interviews. Whether not posting the position violated county policy (a separate question), no reasonable jury could say she took her steps because of discriminatory animus, or even that Mr. Heredia (or his national origin) was top of mind as she acted promptly to address LPCCC's needs. The director didn't "refuse to consider applications from minorities" like Mr. Heredia. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1118 (7th Cir. 1992). She just didn't "seek[] applicants" at all, across the board, *McDonnell Douglas*, 411 U.S. at 802, and the position was never broadly available, *see Burdine*, 450 U.S. at 253. Mr. Heredia never applied, or had the opportunity, just like all others who might have been qualified and who were not hired. From all

indications available to a reasonable jury, Director Beaty faced an emergent situation and promptly identified the person she wanted for the job. It was one and done.

Mr. Heredia argues other features of this indirect method—that he was qualified for the job and that Mr. Benstine (the hiree) was treated more favorably. Mr. Heredia says he was at least as qualified as Mr. Benstine, noting his experience with LPCCC, work history, and other competencies. Perhaps for a reasonable jury that might be true, but this has no bearing on other aspects of this indirect method of proof. And no reasonable jury could truly question whether Mr. Benstine was also qualified. The two men had different credentials, and the preference of one's credentials over another's credentials is precisely the kind of decision that the law defers to employers so long as discriminatory animus has not infected the process. *See Cunningham*, 125 F.4th at 789 ("An employer's genuine belief that another candidate's . . . skillset makes them better suited for the job is a legitimate, nondiscriminatory hiring rationale.").

In addition, Mr. Heredia has not pretextualized the county's legitimate reason for hiring another candidate, given his particular attributes, advanced education, professional history and supervisory skills, and Medical First Responder license. *See Teruggi*, 709 F.3d at 661 ("a party establishes pretext with evidence that the employer's stated reason or the employment decision was a lie—not just an error, oddity, or oversight") (quotations omitted); *Silverman v. Bd. of Educ.*, 637 F.3d 729, 743-44 (7th Cir. 2011) ("Pretext is more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action.") (citation modified and omitted). This record would only invite a jury to speculate that these considerations, and the urgency in which the hiring decision was made, weren't legitimate. *See Cunningham*, 125 F.4th at 790 ("When an employer honestly believed it promoted the best

candidate, its reasoning is not pretext, even if its decision was inaccurate, unfair, . . . foolish, trivial, or baseless.") (quotation omitted).

Even looking at the record holistically would not permit a reasonable jury to find for Mr. Heredia. In addition to his qualifications and Director Beaty's post-hiring remark, he cites nothing direct or circumstantial to permit such a finding. He questions the county's assertion that he wasn't considered due to his history of conflict with another employee (Lori Pusz), who he says made inconsiderate and boorish comments about Spanish speakers. Whether those comments might be direct evidence of her discriminatory animus, this record would not permit a reasonable jury to conclude that her personal views infected Director Beaty's decisionmaking or that Director Beaty (or LaPorte County) considered or endorsed her personal views as opposed to the director being focused on the cooperation and continuity of internal working relationships. *See Galvan*, 117 F.4th at 939; *Ortiz*, 834 F.3d at 765. The court thus grants summary judgment on this discrimination claim.

### 2. *Discrimination in Suspension, Demotion, or Termination.*

Mr. Heredia also says he was discriminated against when he was suspended, demoted, and then terminated. He relies on the indirect method (slightly different from the failure-to-promote context), so his *prima facie* case must be built on a showing that (1) he is a member of a protected class, (2) he met LaPorte County's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees without Puerto Rican ancestry were treated more favorably. *See Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021); *Kuttner v. Zaruba*, 819 F.3d 970, 976 (7th Cir. 2016). LaPorte County contests the second prong and also says its motives for these adverse employment actions were legitimate, not pretextual.

As the county argues, the evidence wouldn't permit a reasonable jury to find that Mr. Heredia met the county's legitimate expectations at the time of his suspension or demotion. Employee expectations are judged by "looking at [the employee's] job performance through the eyes of her supervisors at the time of [the adverse action]." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689-90 (7th Cir. 2008). When Mr. Heredia was suspended, he had already accumulated a robust record of habitual tardiness, including a prior disciplinary action [24-2 Ex. L at 2-3; *id.* Ex. N at 2]. He was demoted within a week of being disciplined for disregarding the "comp time" and "on call" policies and after a history of insubordination culminating in a rash of conflicts with his supervisor [*id.* Ex. O at 2; *id.* Ex. P at 2-4]. There is effectively no job in which this conduct would be appropriate, much less one for a taxpayer-funded entity. These adverse employment consequences were comeuppance for his workplace conduct.

Mr. Heredia's termination soon followed his demotion, and decisionmakers cited a new failure to follow attendance policy, non-responsiveness, the provision of incorrect passcodes, and further insubordination by way of destroying department records [*id.* Ex. R at 2-3]. Mr. Heredia challenges, with his deposition testimony and his lack of possession of the phone on July 18, 2023, that he destroyed any departmental records, that he deleted any messages from his phone, or that he performed a factory reset of his phone [24-1 Tr. 75-79]. He says he didn't. Fair enough, but whether this might create a triable issue for whether he was meeting the employer's expectations in this one regard, and even if Mr. Heredia could present evidence of a differently treated comparator (which this record lacks), *see McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 369 (7th Cir. 2019); *Johnson v. Advoc. Health & Hosp. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018), his evidence fails to put to question the other reasons for termination or adverse consequences in his employment history.

And if the reason for termination was just the destruction of department information (as the county seems to concede in answering an interrogatory), Mr. Heredia never contests that the phone given to LaPorte County on July 19, 2023 (after it was handed to him that day to access) was returned in a problematic condition. In other words, even if he denies he did anything, and even if the jury accepts that as true, he has not established on this record that the county's motive for termination was mere pretext. There may be a debate about who is right and who is wrong as to how the phone was erased, but, alone, just because the county may have been mistaken as to how the phone got in this condition does not show that its given reason for termination was a lie or otherwise disingenuous. Pretext requires more than just mistaken judgment. *See Teruggi*, 709 F.3d at 661; *Silverman*, 637 F.3d at 743-44; *see also Crain*, 63 F.4th at 593 (the law "evaluate[s] the honesty of the employer's explanation, rather than its validity or reasonableness").

Stepping out of the *McDonnell Douglas* framework, and considering this record holistically, the absence of a triable issue on discrimination becomes clearer still. There is no evidence suggesting for a reasonable jury that his Puerto Rican ancestry played a role in his suspension, demotion, or termination. Mr. Heredia argues suspicious timing by virtue of a complaint he made on December 13, 2022 about being treated unfairly and his suspension on January 4, 2023; but, whether this might bear on his retaliation claim (discussed later), this timing would not permit a reasonable jury to conclude that his national origin (as opposed to his complaint) caused his suspension. A jury that acknowledged the timing of his suspension couldn't find a reasonable basis to conclude that the county's reasons for suspension, much less for demotion or termination, occurred because of his Puerto Rican ancestry. *See Galvan*, 117 F.4th at 939; *Ortiz*, 834 F.3d at 765. Without more, the case cannot proceed to trial on a discrimination claim.

B. *Title VII Retaliation.*

Mr. Heredia also claims LaPorte County's decisions not to hire him as Field Coordinator and to suspend, demote, and terminate him were in retaliation for his discrimination complaints. Title VII forbids retaliation against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation" of national origin discrimination. 42 U.S.C. § 2000e-3(a). Essentially, an employer cannot discriminate against an employee because he has opposed a practice forbidden under Title VII. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 59 (2006). This bar "cover[s] a broad range of employer conduct." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173 (2011).

Mr. Heredia uses the direct approach, through which he must present enough direct or circumstantial evidence to show the county's actions were retaliatory. *See Crain v. McDonough*, 63 F.4th 585, 593 (7th Cir. 2023). He must adduce evidence from which a reasonable jury could find that (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between the activity and adverse action. *Runkel v. City of Springfield*, 51 F.4th 736, 746 (7th Cir. 2022). "The evidence presented 'must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself.'" *Lesiv v. Ill. Cent. R.R.*, 39 F.4th 903, 911 (7th Cir. 2022) (quoting *Ortiz*, 834 U.S. at 765). The overarching question is "could a reasonable trier of fact infer retaliation?" *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015).

LaPorte County concedes that Mr. Heredia engaged in statutorily protected activity when he filed an EEOC complaint and when he made other internal complaints. The county also admits he suffered adverse employment actions. The county focuses its argument only on causation. To demonstrate causation, Mr. Heredia must show the county would not have taken

the adverse action but for his protected activity. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017). Evidence of causation may include direct evidence (*e.g.*, statements to this effect) or circumstantial evidence, such as suspicious timing, ambiguous statements of animus, evidence similarly situated colleagues were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual. *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015).

      1.  *Field Coordinator.*

Mr. Heredia argues under the direct method that he was retaliated against when LaPorte County didn't hire him as Field Coordinator. The county doesn't dispute that his February 24, 2022 incident report concerning Ms. Pusz's statements about Spanish speakers was protected activity, nor does he explain why it qualifies, though it seems a reasonable jury could reach that conclusion. *See Northington v. H & M Int'l.*, 712 F.3d 1062, 1065 (7th Cir. 2013) (Title VII protects internal complaints "only if the[y] arose from harassment based on a protected factor"). Even if protected, a reasonable jury couldn't rely on his circumstantial evidence to find that he wasn't promoted because of this report.

He first offers a purportedly ambiguous statement—the county's assertion that he wasn't hired because of his "numerous disputes with [Ms. Pusz] and the concern that neither was able to set these squabbles aside" [24-1 Ex. B ¶ 20]. He says this statement is ambiguous because his strained relationship with Ms. Pusz was in part due to her alleged prejudice, the subject of his report. But the statement is clear, not ambiguous—the county didn't want to promote him into a role in which he would supervise someone with whom he had unresolved conflict. Though a reasonable jury could find that the county was aware of Mr. Heredia's complaint (dated February 24, 2022) when it hired Mr. Benstine rather than post the job (by October 25, 2022), this fact,

alone or collectively with other evidence in this record, cannot support an inference that Mr. Heredia was passed over because of his report. Eight months in between counter-evinces causation. *See Filipovic v. K & R Express Sys.*, 176 F.3d 390, 399 (7th Cir. 1999) (four-month gap counters causal connection).

Mr. Heredia also points to Director Beaty's comment that no Puerto Rican person had been Field Coordinator. But, as discussed, this after-the-fact-of-hiring observation lacks even a tenuous relationship to the county's hiring choice, as the implied connection now to his incident report is speculative at best. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008) (inferences supported by only speculation or conjecture can't defeat summary judgment motion). Considering both statements together, they produce no real synergy. A reasonable jury could not decide that the county would have promoted him to Field Coordinator but for his complaint about Ms. Pusz. *See Nassar*, 570 U.S. at 360; *Baines*, 863 F.3d at 661. And all his other complaints came after the director made this hiring decision. With no qualifying evidence of retaliation in this regard, the court grants summary judgment for the county on this claim.

2. *Disciplinary Actions.*

Mr. Heredia also argues he was disciplined in retaliation for engaging in protected activity. His arguments concerning his January 2023 suspension go nowhere. The ambiguous statements he cites (more on that later) occur in July 2023 [24-2 Ex. P at 2; *id.* Ex. S at 3], long after his suspension, so there is no basis to infer that they relate causatively. He cannot mount the argument that the reason he was suspended (habitual tardiness [*id.* Ex. N at 2]) was pretextual, nor does he really try here.

Instead, Mr. Heredia relies on what he calls suspicious timing because he was suspended just over three weeks after he complained to Director Beaty and other LPCCC leadership that he

was being harassed and retaliated against based on a protected characteristics [*id.* Ex. M at 2]. Suspicious timing exists when an adverse employment action closely follows the protected activity, *Greengrass*, 776 F.3d at 486, but it must be "so close on the heels" that an inference of causation is sensible, *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011). He cites no case in which 22 days was sufficiently close, a designation courts typically reserve for periods spanning a few days to a week. *See, e.g.*, *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (same day); *McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir. 1997) (one day, two to three days, or one week can be enough). In any event, "temporal proximity alone is rarely sufficient to establish causation." *Castro*, 786 F.3d at 565 (quotation omitted); *Loudermilk*, 636 F.3d at 315 (propriety of timing inference "depends on context"). This is not the special case when timing alone can carry the day, so this claim cannot survive.

The analysis is more involved for his demotion and termination. For starters, the timing of these actions could be viewed by a jury as suspicious under the law. The disciplinary memo demoting Mr. Heredia (dated July 10, 2023) occurred within four days of two of his complaints to Director Beaty (on July 6 and 7) [24-2 Ex. P at 2; *id.* Ex. S at 2; 25-10 at 2]. He was also fired on July 20, just one day after another complaint to HR Director Thomas [*id.* Ex. R at 2; 25-15 at 2]. Each complaint cited discriminatory retaliation and mentioned his ongoing EEOC complaint. These adverse actions are near enough to protected activity to be "close on the heels." *See, e.g.*, *McClendon*, 108 F.3d at 797; *cf. Spiegla v. Hull*, 371 F.3d 928, 943 (7th Cir. 2004) (four days enough for First Amendment retaliation claim).

Mr. Heredia also points to ambiguous statements from Director Beaty and Mr. Benstine that could be viewed by a reasonable jury with some real consternation. Based on signatures on the relevant disciplinary memoranda, Director Beaty and Mr. Benstine participated in his

reassignment, and Director Beaty in his termination [24-2 Ex. P at 4; *id.* Ex. R at 4]. Documenting a July 7 meeting with Mr. Heredia to discuss his complaints, Director Beaty said the "[a]dministration is spending more than 5 hours weekly dealing with [his] formal and informal complaints," and despite once calling it a "right," demanded that "[t]his has to stop" [*id.* Ex. S at 3]. The July 17 disciplinary memo documents Mr. Benstine's discomfort serving Mr. Heredia paperwork or interviewing him without another present or a recording "due to his hostile nature and the constant threat of running to HR, EEOC, and the labor board" [*id.* Ex. P at 2].

The latter statement, in respects, may seems more innocuous and indeed pragmatic, but the former one, if credited by a jury, could be construed as downright antagonistic toward protected activity and recalibrate how one views these complaints as "hostile," "constant threats," and needing to "stop." This isn't language that one uses to describe a protected right. Moreover, Mr. Heredia factually contests whether he was ever hostile toward Mr. Benstine. Whether these comments about the burdens of his complaints and the need for "this" to "stop" are retaliatory or benign, conjoined with the timing of these remarks and his demotion and termination, are questions for a jury. *See Greengrass*, 776 F.3d at 486-87; *see also Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 648 (7th Cir. 2013) (in retaliation cases, court must "leave any questions involving the weighing of conflicting indications of motive and intent for trial") (quotations omitted).

Mr. Heredia also argues certain pretext—"an attempt to mask a discriminatory reason with a legitimate excuse." *Crain*, 63 F.4th at 593 (citations omitted). Mr. Heredia must identify weaknesses, implausibilities, inconsistencies, or contradictions in the county's asserted reasons for taking adverse employment actions such that a reasonable person would doubt its credibility. *Id.* Whatever dissonance can be found by a reasonable jury in the county's asserted reasons for demotion and termination, even if slight, could be credited toward the mix of circumstantial

evidence for the retaliation claim in a way that it would not for the discrimination claim, particularly when the county's decisionmakers could be said by the factfinder to have displayed hostility toward the exercise of his rights.

Weighing the causation evidence in Mr. Heredia's favor and evaluating it as a whole, a reasonable jury could find that LaPorte County's decisions to demote or terminate him were retaliatory. A jury might not, but ultimately these are questions for it to decide, given that so many are hinged on the credibility of witnesses and the disambiguation of ambiguous statements. The court thus denies summary judgment on his Title VII retaliation claim specific to his demotion and termination.

CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART LaPorte County's summary judgment motion [23], GRANTS summary judgment to the county on all discrimination and retaliation claims, except solely the retaliation claim as to Mr. Heredia's demotion and termination, DENIES the motion to strike [27], DENIES the motion for a hearing or to permit a reply [30], and DENIES AS MOOT the motion to set a hearing or status conference [32]. The case will proceed to trial as scheduled on these issues alone.

SO ORDERED.

July 10, 2025                                        s/ Damon R. Leichty
                                                     Judge, United States District Court